## Court of Appeals.

### May, 1903.

## THE PEOPLE v. WILLIS VAN WORMER.

### (175 N. Y. 188.)

1. MURDER—EVIDENCE.

The evidence upon a trial for homicide reviewed and held sufficient to support a verdict convicting defendants of the crime of murder in the first degree.

2. SAME—CO-DEFENDANT AS A WITNESS FOR PROSECUTION.

A co-defendant, jointly indicted with other defendants upon trial for murder, is a competent witness for the prosecution against them, provided he himself is not on trial at the time, notwithstanding the fact that the indictment against him is still pending, having been disposed of neither by acquittal or *nolle prosequi* nor by conviction or plea of guilty.

3. SAME—EVIDENCE—COMPARISON OF SHOES WITH FOOTPRINTS—NOT A VIOLATION OF N. Y. CONST., ART. 1, SECTION 6.

Where the shoes of defendants were taken from them and placed in the footmarks leading to the house of the deceased made in newly fallen snow on the night of the murder by the persons who went to the house, and the shoes corresponded in all respects with the footprints, evidence of this fact is not inadmissible upon the ground that the seizure of the shoes and their comparison with the footprints compelled the defendants to be witnesses against themselves and was a violation of their constitutional safeguard. (Const. art. 1, sec. 6.)

APPEALS from a judgment of the Supreme Court, rendered at a Trial Term for the county of Columbia, April 18, 1902, upon a verdict convicting defendants of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

J. Rider Cady, Alonzo H. Farrar and Ezra D. De Lamater, for appellants.

Alfred B. Chace, District Attorney (A. Frank B. Chace, of counsel), for respondent.

CULLEN, J.: The three appellants, with one Harvey Bruce, were indicted for murder in the first degree in having feloniously, willfully and with malice aforethought, and with a deliberate and premeditated design to effect his death, killed Peter A. Hallenbeck on the 24th of December, 1901. The case seems to have been tried with that degree of care which should mark every capital prosecution, not less in justice to a defendant whose life is at stake than to the People, who are interested that in case of the guilt of the accused there shall be no miscarriage of justice on account of failure to comply with the rules of law. The result is that the record before us is quite free from even controvertible questions, the rulings of the trial court which have been challenged on this appeal being well sustained both by principle and by authority. As the learned counsel for the appellants contends that the evi-evidence was insufficient to warrant a verdict of murder in the first degree, it is necessary to narrate the occurrence, but that narration need be but of the briefest character, since one or two pivotal facts conclusively prove the crime and its degree.

The deceased was a farmer, aged fifty-five years, who resided on his farm, some three miles southeast of the city of Hudson. The appellants were the nephews of his wife, and aged respectively twenty, twenty-two and twenty-six years. Their father was dead, and at the time of the commission of the crime they resided with their stepmother at Kinderhook, about twelve miles northeasterly from Hudson. They had formerly lived on a farm in the vicinity of that of the deceased. On this farm the deceased held a mortgage, which he foreclosed, and after the sale, and in the September before the murder, the appellants, with their stepmother, had moved to Kinderhook. One of the appellants expressed hostility to the deceased on account of this foreclosure and threatened " to get even with him," and to one witness stated he would kill him. . The co-defendant, Harvey Bruce, was their cousin, who had been

spending some time in the home of the appellants at Kinder-
hook. The family of the deceased consisted of himself, his
wife, his mother, a brother, Charles Hallenbeck, and his wife
and a hired man. These persons resided at the farm house.
On Christmas eve, 1901, the brother, with his wife and the
hired man, attended some festivities in the church about a
mile distant, leaving the deceased, with his wife and mother,
in the house. About half-past seven o'clock the deceased and
his wife were in the sitting-room, the former reading. His
mother, a woman of eighty, had just gone upstairs to her room.
A knock was heard at the kitchen door and the deceased
arose, went into the kitchen and opened the door. Accord-
ing to the testimony of the wife four men, with masks on
and with revolvers in their hands, entered and commenced to
shoot at her husband. She went into the kitchen and, being
frightened, rushed away through her bedroom and upstairs
to the attic, where she and the mother of the deceased barri-
caded the doors. She testified that the men shot at her as she
ran away. Mr. Elting, a farmer, residing about three hundred
yards away, heard the noise of the firing and saw a wagon
driven rapidly down the road. At once he went over to the
Hallenbeck house, found the kitchen door open and a light
burning brightly. He called for the deceased, but got no reply.
He then went to another neighbor, Mr. Betts, and both entered
the Hallenbeck house. They found Peter A. Hallenbeck lying
dead on the kitchen floor, the clothing on his arm burning.
They put out this fire and called to the mother and wife of the
deceased, who, recognizing their voices, came downstairs. Then
word of the tragedy was sent to the people at the church, who,
in some numbers, shortly appeared upon the scene. Word was
also sent to the sheriff and coroner of the county and the chief
of police at Hudson. What directed suspicion to the defend-
ants and what circumstances tended to identify them as the
persons who had shot the deceased it is unnecessary to narrate,

for though all at first denied any complicity in the transaction, Bruce, one of the party, turned informer, and upon the trial was a witness for the prosecution. Each of the appellants went on the stand in his own behalf and admitted that he was one of the persons who shot the deceased. Their statements are substantially the same. It is that they drove from Kinderhook to the Hallenbeck house, a distance of some fifteen miles, " to have some fun with him (the deceased) ; to scare him ;" that solely with this intent and without any design to injure the deceased, when they arrived at the barn they put on the masks, they turned their coats inside out, and each with a revolver in his hand went to the kitchen door; that when the deceased opened the door he seized the appellant Burton Van Wormer by the throat, struck him in the face; that in the scuffle Burton's revolver was discharged and then a general fusilade ensued; that deceased went for a gun which lay on a rack in the kitchen, and thereupon they ran away. Bruce, the informer, testified that as they drove home two of them boasted of how they had shot the deceased. But it is not necessary to rely on Bruce's statements. It is sufficient to say that there were eight, if not nine, bullet wounds on the body of the deceased; that six bullets were taken from the body and two left in it, not being removed because they were seated deep in the tissues. Bullets or bullet marks were found in every room on the first floor, the kitchen, the sitting-room and the bedroom of the deceased and his wife. Altogether there appears to have been eighteen bullets or bullet marks found in or on the deceased or in the walls and ceilings of the house. The revolvers were of different calibres and bullets from each of them were found in the body of the deceased. The gun belonging to the deceased was found lying across his chest, but neither barrel had been discharged. In the light of the wounds on the deceased and the number of shots fired, it seems to us wholly unnecessary to discuss the sufficiency of the evidence to warrant the jury in

finding that the murder was deliberate and premeditated. In view of these facts, the story of the appellants, that their expedition was simply a boyish prank to frighten the deceased, surpasses human credulity. It is difficult, if not impossible, to see how any conscientious jury could have found a verdict other than that rendered.

It is necessary to notice only two exceptions taken on the trial. The appellants objected to the competency of their co-defendant Bruce as a witness for the prosecution on the ground that he was jointly indicted with them, and that the indictment against him was still pending, not having been disposed of either by acquittal or *nolle prosequi* or by conviction or plea of guilty. At common law a party to the record was not a competent witness either on his own behalf or on behalf of a co-defendant. But the weight of authority is to the effect that he is a competent witness for the prosecution against his co-defendants, provided he himself is not on trial at the time. Mr. Greenleaf (1 Evidence, sec. 379) states the rule to be: " The admission of accomplices, as witnesses for the government, is justified by the necessity of the case, it being often impossible to bring the principal offenders to justice without them. The usual course is, to leave out of the indictment those who are to be called as witnesses; but it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put on his trial at the same time with his companions in crime." Wharton (Crim. Ev., sec. 439) and Starkie (2 Ev., sec. 11) maintain the same doctrine, while Mr. Bishop (Crim. Proc., sec. 1020) states the rule to the contrary. An exhaustive review of the question is found in State v. Barrows (76 Me. 401), where it was unanimously held by the Supreme Court of Maine that on the separate trial of one defendant a co-defendant jointly indicted with him was a competent witness for the prosecution. The question again arose in Benson v. United States (146 U. S. 325), where the

Supreme Court of the United States approved and followed the decision in the Maine case, and this though the court had previously held (U. S. v. Reid, 12 How. [U. S.] 361) that a defendant jointly indicted was not a competent witness for his co-defendant. It was there said: " The precise question in that case was as to the right of the defendant to call his co-defendant, and not that of the Government to call the co-defendant, and a distinction has been recognized between the two cases." The point has never been passed upon by this court, for in Lindsay v. People (63 N. Y. 153), relied upon by the appellants, it was in no way presented or involved, nor does the discussion of the opinion bear on it. The current of the decisions in the other courts of this State is in support of the rule that a co-defendant in a joint indictment is a competent witness for the prosecution. It was so held in Wilson v. People (5 Park. Crim. Rep. 119), in People v. Satterlee (5 Hun, 167), and in Taylor v. People (12 Hun, 212). The only decision to the contrary is that of People v. Donnelly (2 Park. Crim. Rep. 182), which was expressly overruled in the later cases. If, however, the question is to be considered an open one in this court, we should unhesitatingly adopt the rule declared in the cases cited other than that of People v. Donnelly. The argument in its favor stated by Chief Judge PETERS in State v. Barrows seems to us conclusive. It is unquestionable under all the decisions and all the text writers that if one of several persons engaged in the commission of a crime be indicted for that crime in a separate indictment, he is a competent witness for the prosecution against his associates when tried under an indictment for the same offense. The distinction sought to be drawn, therefore, is merely of form and not of substance, and the case is not one of those where form is necessary or justifiable to protect the substance which lies behind it.

After the arrest of the defendants their shoes were taken from them and placed in the footmarks leading to the house

of the deceased made in the newly fallen snow on the night of the murder by the parties who went to the kitchen door. The shoes corresponded in all respects with the footprints, and evidence of this fact, against objection and exception of the appellants, was admitted. It is contended that the seizure of the shoes and their comparison with the footprints compelled the defendants to be witnesses against themselves and violated their constitutional safeguard. This claim is entirely disposed of by the decision of this court in People v. Gardner (144 N. Y. 119). It was there held that the constitutional protection that no one can be compelled to be a witness against himself (Const. art. 1, sec. 6) prohibited " the compulsory oral examination (doubtless written examination also) of prisoners before trial, or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime," but that " a murderer may be forcibly taken before his dying victim for identification;" " a thief may be forcibly examined and the stolen property may be taken from his person," and " a prisoner may be examined for marks and bruises and then they may be proved upon his trial to establish his guilt."

The judgment of conviction should be affirmed.

PARKER, Ch. J., GRAY, O'BRIEN, VANN and WERNER, JJ., concur; BARTLETT, J., absent.

Judgment of conviction affirmed.