THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. NICK CHIAGLES, Appellant.

Civil rights — search and seizure — when search of the person
lawful — search made upon one lawfully arrested for crime is
not confined to implements of felony but may be made for
evidence of guilt — constitutional privilege against self-incrim-
ination not violated by reception in evidence of fruits of lawful
search — when letters found upon person of one arrested for
crime may be lawfully retained — when motion for summary
orders for their return properly denied.

1. Though immunity from unreasonable search and seizure is the
rule (Civil Rights Law, § 8), the government may search the person
of one accused when legally arrested, to discover and seize the fruits
and evidence of crime. Search of the person is unlawful when the
seizure of the body is to discover grounds as yet unknown for
arrest or accusation. Search of the person becomes lawful when
grounds for arrest and accusation have been discovered and the
law is in the act of subjecting the body of the accused to its physical
dominion.

2. Search incidental to arrest is not confined, as under a search
warrant, to property stolen or embezzled, or used as the means of
committing a felony, or held with the intent to use it as an instrument
of crime, but may be made for anything that may be of use as evidence
upon the trial or that will aid in securing conviction.

3. The privilege against self-incrimination guaranteed by the Con-
stitution of the state (Art. 1, § 6) is not available to prevent the intro-
duction in evidence of documents lawfully seized as the result of lawful
search.

4. Letters, therefore, found upon the person of one accused of
crime and legally arrested therefor, which are stated by the district
attorney in his answering affidavit to be necessary, material, com-
petent and relevant evidence on behalf of the People upon the prosecu-
tion, may be lawfully retained and a motion for a summary order direct-
ing their return is properly denied, even though the contents of the
letters are not set forth in the record.

*People* v. *Chiagles*, 204 App. Div. 706, affirmed.

(Argued November 9, 1923; decided December 27, 1923.)

13

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 20, 1923, which affirmed an order of Special Term denying a motion for the return of certain letters taken from the person of the defendant at the time of his arrest.

The following question was certified:

" Has the district attorney the legal right to retain the letters taken from the person of the defendant at the time of the arrest? "

*H. D. Wright* for appellant. The seizure of the letters from the person of the defendant, without a search warrant, is in contravention of the Fourth and Fifth Amendments of the Constitution of the United States and contrary to the provisions of section 6 of article 1 of the Constitution of the state of New York. (*People ex rel. Taylor* v. *Forbes,* 149 N. Y. 219; *People ex rel. Ferguson* v. *Reardon,* 197 N. Y. 236; *Matter of Barnes,* 204 N. Y. 108; *Boyd* v. *United States,* 110 U. S. 616; *Weeks* v. *United States,* 232 U. S. 298; *People* v. *Kakira,* 118 Misc. Rep. 303; *Smith* v. *Jerome,* 47 Misc. Rep. 22.)

*J. William Titcomb, District Attorney,* for respondent. Under the police power of the state and through long-established custom peace officers in the discharge of their duty have found it necessary for their own and the public's safety to search alleged criminals lawfully in custody for weapons, fruits of the alleged crime and evidence tending to support the People's charge, which power seems well established by precedent. (*Smith* v. *Jerome,* 47 Misc. Rep. 22; *People* v. *Adams,* 176 N. Y. 351; *People* v. *McDonald,* 177 App. Div. 806; *People* v. *Kalnin,* 189 N. Y. Supp. 359; *People* v. *Esposito,* 118 Misc. Rep. 867.) Section 6, article 1 of the State Constitution, providing that no person shall be compelled to be a witness against himself, does not apply. (*People* v. *Mandel,* 90 Misc. Rep. 170; Wigm. on Ev. § 2263.)

CARDOZO, J.   A peace officer of the city of Gloversville arrested the defendant on October 13, 1922, charging him with a felony, arson in the third degree.   The defendant when arrested was searched, and papers and other articles were found upon his person.   Everything so found was returned, except two letters, which the district attorney retains on the ground that they supply incriminating evidence.   The defendant, after examination before a magistrate, was held to answer to the charge. He moves for an order that the letters be returned.

" The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, ought not to be violated; and no warrants can issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized " (Civil Rights Law, § 8; Consol. Laws, ch. 6).   It is thus the statutes of New York express the principle that English law received as the outcome of the prosecutions of Wilkes and Entick (*Entick* v. *Carrington*, 19 Howell's State Trials, 1030; *Wilkes' Case*, 19 Howell's State Trials, 1405; *Boyd* v. *U. S.*, 116 U. S. 616, 626).   The immunity is not from all search and seizure, but from search and seizure unreasonable in the light of common-law traditions. If immunity is to be conceived of as the rule, there is one exception that has been established as firmly as the rule itself.   The government may " search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime " (*Weeks* v. *U. S.*, 232 U. S. 383, 392).   There is no dearth of illustrative precedents both in our own country and abroad (*Dillon* v. *O'Brien*, 16 Cox C. C. 245; *U. S.* v. *Snyder*, 278 Fed. Rep. 650; *U. S.* v. *Wilson*, 163 Fed. Rep. 340; *U. S.* v. *Welsh*, 247 Fed. Rep. 239; affd., 267 Fed. Rep. 819; *U. S.* v. *Murphy*, 264 Fed. Rep. 842; *Woolfolk* v. *State*, 81 Ga. 551, 562; *People ex rel. Murphy* v. *Brown*, 83 Wash. 100; *Getchell* v. *Page*, 103 Me. 387; *State* v. *Hassan*, 149 Ia. 518, 524;

*Closson* v. *Morrison*, 47 N. H. 482, 484; *Houghton* v. *Bachman*, 47 Barb. 388; 1 Bishop Crim. Pr. § 211; 9 Halsbury Laws of England, p. 309; 13 id. p. 510). The right goes back beyond doubt to the days of the hue and cry, when there was short shrift for the thief who was caught " with the mainour," still " in seisin of his crime " (2 Pollock & Maitland History of English Law, 577, 578). The defendant, conceding the right, would, none the less, restrict the seizure to things subject to be taken under a search warrant when there is no arrest of the possessor. Search is then confined under our statute to property stolen or embezzled, or used as the means of committing a felony, or held with the intent to use it as an instrument of crime (Code Crim. Pro. § 792). We find no support for a like restriction upon search incidental to arrest. The books speak broadly of searching the person of the prisoner for anything " that may be of use as evidence upon the trial " (*Thatcher* v. *Weeks*, 79 Me. 547, 549), or for anything " that will aid in securing the conviction " (*Holker* v. *Hennessey*, 141 Mo. 527, 539; cf. *Weeks* v. *U. S., supra*). If things of evidential value are to be excluded unless of such a nature as to be themselves the instruments of felony, the line may not be drawn between books and papers on the one hand and other articles on the other. " There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized " (*Gouled* v. *U. S.*, 255 U. S. 298, 309). Letters to or from accomplices found on the person of a conspirator, and evidencing the plan or the execution of the conspiracy (cf. *Dillon* v. *O'Brien, supra*, at p. 248), will have to be returned to the prisoner for concealment or destruction if only the fruits or the implements of crime may be retained; but so also will a murderer's garments, stained with his blood in the course of the affray. Garments thus bespattered are typical

1923.]                Opinion, per CARDOZO, J.        [237 N. Y. 193]

examples of the things that precedent and practice permit the government to keep (*Woolfolk* v. *State, supra; State* v. *Baker,* 33 W. Va. 319). The basic principle is this: Search of the person is unlawful when the seizure of the body is a trespass, and the purpose of the search is to discover grounds as yet unknown for arrest or accusation (*Entick* v. *Carrington, supra*). Search of the person becomes lawful when grounds for arrest and accusation have been discovered, and the law is in the act of subjecting the body of the accused to its physical dominion.

The distinction may seem subtle, but in truth it is founded in shrewd appreciation of the necessities of government. We are not to strain an immunity to the point at which human nature rebels against honoring it in conduct. The peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed. The search being lawful, he retains what he finds if connected with the crime. We may be sure that the law would be flouted and derided if, defeating its own ends, it drew too fine a point, after sanctioning the search, between the things to be retained and the things to be returned. How fine the point might be, has illustration in the case before us. The defendant does not attack the legality of the arrest. The attack, if made, would have no basis in the record, for the facts stated in the affidavit of the prosecuting officer make out a *prima facie* case of the commission of a felony, with reasonable cause for the belief that the person arrested had committed it (Code Crim. Pro. § 177). Conceding the legality of the arrest, he concedes by implication the legality of the search. What he complains of is not the search but the seizure that succeeded it. The search, we are told, may lawfully be made, but what is found must be returned, though it be proof positive of guilt, unless at the same time it is an implement of felony. This is to carry the immunity

beyond the bounds of reason. The question has been much debated, and may still be open in this state, whether the evidences of guilt will be turned back to the prisoner if the search producing them was lawless (4 Wigmore Evidence, § 2184; *Weeks* v. *U. S., supra; Gouled* v. *U. S., supra; Burdeau* v. *McDowell,* 256 U. S. 465; cf. *People* v. *Adams,* 176 N. Y. 351). A ruling favorable to the defendant would bring us to a position even more extreme, and would mean that the evidences must be returned though the search producing them was lawful. We will not go so far.

The defendant invokes the protection of article I, section 6, of the Constitution of the state: no person shall " be compelled in any criminal case to be a witness against himself." Privilege against self-incrimination is not identical with immunity from unreasonable search (4 Wigmore Evidence, § 2263; *People* v. *Van Wormer,* 175 N. Y. 188, 195; *Holt* v. *U. S.,* 218 U. S. 245, 252), though they have their points of approach and at times their point of contact (*Gouled* v. *U. S., supra*). We are not required at this time to trace the dividing line between them. This much at least is certain. When the things received in evidence are the fruits of *lawful* search, the claim of privilege is hollow (*Boyd* v. *U. S., supra,* at p. 633; *Burdeau* v. *McDowell, supra*). Search would be mere futility if what is found could not be used.

A question of practice remains to be considered. The defendant in his petition does not state the contents of the letters. He says that they were written to him by named persons at stated times. He adds that they are private correspondence, " in no way connected with the crime." This statement is belied to some extent by the statement which goes with it that the seizure was in violation of the constitutional privilege against self-incrimination. The district attorney, answering the petition, is content like the petitioner, with a statement of conclusions. The letters found on the defendant's

person are said to be "necessary, material, competent and relevant evidence in the above entitled action for and in behalf of the people and against the defendant." If they have and can have no such effect or tendency, they are not to be retained (*Rex* v. *O'Donnell*, 7 C. & P. 138; *Dillon* v. *O'Brien, supra*, at p. 248; *Hubbard* v. *Garner*, 115 Mich. 406). The point is made that upon this record there has been a failure to prove their incriminating quality.

We think the record permits the retention of the letters to abide the outcome of the trial. The defendant asks the court by summary order to direct the conduct of its officer. Such a summary order may be refused, unless it is clear that the papers are unrelated to the controversy. The defendant states one conclusion, though lamely and with apparent inconsistency. The district attorney states another, no doubt with a due sense of the responsibility of his office. The trial will fix the right.

The order should be affirmed, and the question certified answered in the affirmative.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order affirmed.