THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN DEFORE, Appellant.

First Department, July 6, 1925.

Crimes — evidence — motion to prohibit use of articles belonging to defendant as evidence — articles were seized by police officers without formality of law — use of said articles as evidence not violation of United States Constitution, Fifth Amendment, or State Constitution, art. 1, § 6, prohibiting compulsory self-incrimination — use as evidence of blackjack, possession of which constitutes basis of crime charged, which was unlawfully seized in violation of United States Constitution, Fourth Amendment, and Civil Rights Law, § 8, will not be prohibited — use as evidence of other articles unlawfully seized will not be prohibited — prosecuting officers will not be required to return said articles to defendant before trial — Fourth and Fifth Amendments of United States Constitution apply solely to National action.

The defendant, who was indicted for criminally carrying and possessing a weapon commonly known as a blackjack, was not entitled to an injunction to restrain the police commissioner of the city of New York and the district attorney from

using as evidence the blackjack and other articles belonging to the defendant which were seized by the police officers without the formality of law, and said prosecuting officers will not be required to return the property so seized before trial.

The use of said articles as evidence was not, notwithstanding their unlawful seizure, a violation of the Fifth Amendment to the United States Constitution or of section 6 of article 1 of the State Constitution prohibiting compulsory self-incrimination of a defendant.

Such articles may be used as evidence, although they were seized in violation of the Fourth Amendment of the United States Constitution and section 8 of the Civil Rights Law guaranteeing immunity from unreasonable search and seizure.

Such evidence will not be suppressed on a motion made prior to the trial on the ground that the articles constituting the evidence were unlawfully seized, for as to the blackjack which formed the basis of the criminal charge against the defendant, that article was contraband in the possession of the defendant, and the defendant is not entitled to any protection whatsoever as to it.

As to the other articles which were seized by the police and which were not contraband, the motion to suppress their use as evidence should be denied, notwithstanding they were unlawfully seized, for the manner of their procurement should not determine their use as evidence, and if their seizure in itself constitutes a crime, that crime may be punished by the court.

The Fourth and Fifth Amendments of the United States Constitution are not restraints upon the power of the States, but relate solely to National action.

Appeal by the defendant, John Defore, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, rendered on the 6th day of March, 1925, convicting him of criminally carrying and possessing a weapon in violation of section 1897 of the Penal Law, and also from an order entered in said clerk's office on the 7th day of January, 1925, denying defendant's motion to enjoin the police commissioner of the city of New York and the district attorney of the county of New York from using certain articles seized as evidence.

*James Marshall,* for the appellant.

*Joab H. Banton, District Attorney [Felix C. Benvenga, Assistant District Attorney,* of counsel; *Edwin B. McGuire, Deputy Assistant District Attorney,* with him on the brief], for the respondent.

Finch, J.:

The defendant was indicted, tried and convicted of criminally carrying and possessing a weapon commonly known as a blackjack, after previously having been convicted of the crime of unlawfully possessing a firearm, under the provisions of section 1897 of the Penal Law (as amd. by Laws of 1921, chap. 297)* providing as follows: "A person who attempts to use against another, or who carries, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sand club, sandbag, metal knuckles, bludgeon, or who, with intent to use the

---

* Since amd. by Laws of 1925, chap. 286.— [Rep.

same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument, or weapon, is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony." Before the trial the defendant moved for an order enjoining the police commissioner of the city of New York and the district attorney of the county of New York " from using a certain blackjack, slungshot, billy or bludgeon, and any and all other articles " found or seized on premises occupied by the defendant, and " from using any evidence or information derived from a search of such premises and from said seizure " upon the ground that the same was obtained through an illegal search of the defendant's premises, in violation of his constitutional and statutory rights. Said motion was denied. Upon the trial, but before any testimony was taken, the defendant renewed the motion to suppress the aforesaid evidence, and the motion was denied. The appeal brings up for review the question whether the evidence obtained through the search of the defendant's premises was available against him upon the trial.

The defendant had hired a room in a furnished-room house conducted by one Mrs. Caldwell. On November 17, 1924, a son of Mrs. Caldwell missed an overcoat, and discovered the same in a closet in the defendant's room. The defendant was detained on the charge of having stolen the overcoat, and policemen summoned. While the defendant was in custody of one officer downstairs, another officer searched the defendant's room upstairs and brought down two bags. One of these was opened in the presence of the defendant, and in it was found a blackjack concealed in a hat. The defendant was tried on the charge of petit larceny, a misdemeanor arising out of the alleged theft of the overcoat, and was acquitted. For the unlawful possession of the aforesaid blackjack the defendant was indicted, tried and convicted as aforesaid. The bag, hat and blackjack were offered and received in evidence.

The defendant relies upon the constitutional and statutory provisions which guarantee him the right to immunity from unreasonable search and seizure (Civil Rights Law, § 8; U. S. Const. 4th Amendt.), and those which protect him against compulsory self-incrimination (N. Y. Const. art. 1, § 6; U. S. Const. 5th Amendt.). The Civil Rights Law (§ 8, as amd. by Laws of 1923, chap. 80) provides: " The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants can issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The New York Constitution (Art. 1, § 6) provides: " No person * * * shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law."

The Fourth Amendment is the search and seizure provision of the Federal Constitution and the Fifth Amendment is the compulsory self-incrimination provision thereof. The wording of these amendments is substantially the same as the provisions just quoted.

In passing to the questions to be considered it need only be pointed out that the reliance of the defendant upon article 1, section 6, of the New York Constitution, above quoted, which, as noted, is the equivalent of the Fifth Amendment to the Constitution of the United States, does not furnish to the defendant any support. The Fifth Amendment is based upon the old maxim of the common law that no one should be compelled to be a witness against himself, *nemo tenetur seipsum accusare.* This maxim became a bulwark against extracting alleged confessions by torture or otherwise, which existed in the continental system and in England until the expulsion of the Stuarts from the British throne in 1688. The change represented by this maxim in the English criminal procedure was founded on no statute but upon this expression of the court in aid of the common-law idea of justice. In this country what had been a mere rule of evidence in England found expression in constitutional and statutory enactments. The Fourth Amendment, on the other hand, that relating to unreasonable search and seizure, is based upon the old common-law maxim that every man's house is his castle, and that while the rain may descend upon it and the winds may blow through it, yet the king cannot enter it save through the force of the law. Thus, as was said in *Hale* v. *Henkel* (201 U. S. 43, 72) by Mr. Justice Brown: " Subsequent cases treat the Fourth and Fifth Amendments as quite distinct, having different histories, and performing separate functions."

In *People* v. *Chiagles* (237 N. Y. 193) the court by Cardozo, J., said: " The defendant invokes the protection of article I, section 6, of the Constitution of the State: no person shall ' be compelled in any criminal case to be a witness against himself.' Privilege against self-incrimination is not identical with immunity from unreasonable search (4 Wigmore Evidence, § 2263; *People* v. *Van Wormer,* 175 N. Y. 188, 195; *Holt* v. *U. S.,* 218 U. S. 245, 252), though they have their points of approach and at times their point of contact [*Gouled* v. *U. S.,* 255 U. S. 298, 309]."

There seems to be an agreement among judicial authorities that the provisions against self-incrimination of the Fifth Amendment to the Constitution of the United States and the corresponding

provisions in this State (Const. art. 1, § 6) are not violated by the introduction in evidence of any personal effects of the defendant. In *Burdeau* v. *McDowell* (256 U. S. 465, 475) the court through Mr. Justice DAY said: " The Fifth Amendment, as its terms import is intended to secure the citizen from compulsory testimony against himself. It protects from extorted confessions, or examinations in court proceedings by compulsory methods."

In *People* v. *Van Wormer* (175 N. Y. 188, 195) the court by CULLEN, J., said: "After the arrest of the defendants their shoes were taken from them and placed in the footmarks leading to the house of the deceased made in the newly fallen snow on the night of the murder by the parties who went to the kitchen door. The shoes corresponded in all respects with the footprints, and evidence of this fact, against objection and exception of the appellants, was admitted. It is contended that the seizure of the shoes and their comparison with the footprints compelled the defendants to be witnesses against themselves and violated their constitutional safeguard. This claim is entirely disposed of by the decision of this court in *People* v. *Gardner* (144 N. Y. 119). It was there held that the constitutional protection that no one can be compelled to be a witness against himself (Const. art. 1, § 6) prohibited ' the compulsory oral examination (doubtless written examination also) of prisoners before trial, or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime,' but that ' a murderer may be forcibly taken before his dying victim for identification; ' ' a thief may be forcibly examined and the stolen property may be taken from his person,' and ' a prisoner may be examined for marks and bruises and then they may be proved upon his trial to establish his guilt.' "

The reliance, therefore, of the defendant must be upon the constitutional and statutory provisions which give the right to immunity from unreasonable search and seizure. (U. S. Const. 4th Amendt.; Civil Rights Law, § 8, *supra*.) In this connection, we find the rule well-nigh universally recognized among judicial authorities that in the trial of a case the court will not turn aside to try out an issue as to how the evidence was obtained. As was said in *People* v. *Mayen* (188 Cal. 237): " There is no rule better established or more universally recognized by the courts than that where competent evidence is produced on a trial the courts will not stop to inquire or investigate the source from whence it comes or the means by which it was obtained."

In *People* v. *Adams* (176 N. Y. 351; *sub nom. Adams* v. *New York*, 192 U. S. 585) the Court of Appeals by BARTLETT, J., said: " In Greenleaf on Evidence (Vol. 1, § 254a) the learned author says:

' It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they were offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it frame issues to determine that question.'

" In *Commonwealth* v. *Tibbetts* (157 Mass. 519) it was held as follows: ' Evidence which is pertinent to the issue is admissible although it may have been procured in an irregular or even an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent. [Citing cases.] '

" In this State the same principle has been recognized in *Ruloff* v. *People* (45 N. Y. 213), and a kindred principle in *People* v. *Van Wormer* (175 N. Y. 188, 195).

" The underlying principle obviously is that the court, when engaged in trying a criminal cause, will not take notice of the manner in which witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence."

In *Weeks* v. *United States* (232 U. S. 383) Mr. Justice Day, while holding that such evidence should be suppressed, yet agreed with the principle stated in the cases last above cited, and writing for the court said: " This doctrine thus laid down by the New York Court of Appeals and approved by this court, that a court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many State cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to *State* v. *Turner*, 136 Am. St. Rep. 129, 135 *et seq.*\* After citing numerous cases the editor says: ' The underlying principle of all these decisions obviously is, that the court, when engaged in the trial of a criminal action, will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence: *People* v. *Adams*, 176 N. Y. 351; 98 Am. St. Rep. 675; 68 N. E. 636; 63 L. R. A. 406. Such an investigation is not involved necessarily in the litigation in chief, and to pursue it would be to halt in the orderly progress of a cause, and consider incidentally a question which has

---

\* See, also, 82 Kans. 787.— [Rep.

happened to cross the path of such litigation, and which is wholly independent thereof.'

" It is therefore evident that the *Adams Case* affords no authority for the action of the court in this case, when applied to in due season for the return of papers seized in violation of the Constitutional Amendment. The decision in that case rests upon incidental seizure made in the execution of a legal warrant and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes."

The United States Supreme Court has modified this principle somewhat by providing that the motion may be made immediately after the jury is sworn and before any evidence is taken (*Amos* v. *United States,* 255 U. S. 313), and also that where a defendant is apprised for the first time that evidence illegally obtained from him is in the possession of the attorneys for the State, he may then move for the suppression of such evidence even during the course of the trial. (*Gouled* v. *United States,* 255 U. S. 298.)

We are thus brought to a consideration of the merits of the application when a timely motion is made to suppress the evidence illegally obtained. Any objection based upon the fact that the court will not turn aside from a trial to investigate the means by which competent evidence has been produced is then absent. Before thus proceeding to a consideration of the three articles which were sought to be suppressed as evidence, it is to be noted that the main question presented by this appeal concerned the blackjack, which is an article of contraband in the possession of which the defendant is entitled to no protection whatsoever. It has never been held that the search and seizure of a contraband article was unreasonable.

In *Boyd* v. *United States* (116 U. S. 616) Mr. Justice BRADLEY, writing for the court, said: " The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto cœlo.* In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. The first statute

passed by Congress to regulate the collection of duties, the Act of July 31, 1789, 1 Stat. 29, 43,* contains provisions to this effect.   As this act was passed by the same Congress which proposed for adoption the original amendments to the Constitution, it is clear that the members of that body did not regard searches and seizures of this kind as ' unreasonable,' and they are not embraced within the prohibition of the Amendment.   So, also, the supervision authorized to be exercised by officers of the revenue over the manufacture or custody of excisable articles, and the entries thereof in books required by law to be kept for their inspection, are necessarily excepted out of the category of unreasonable searches and seizures. So, also, the laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within this category.   *Commonwealth* v. *Dana,* 2 Met. (Mass.) 329.   Many other things of this character might be enumerated."

In *United States* v. *O'Dowd* (273 Fed. 600) the court said: " The United States Supreme Court have so far not applied this doctrine, except to documents having only evidential value, procured by an unreasonable search and seizure.   It has not yet held that a thief is entitled to have returned to him stolen goods found in his possession and seized by an officer without a search warrant.   It has not yet held that a burglar, a counterfeiter, or a smuggler, has a similar right to the return of the implements and tools of his trade and crime, merely because possession of them was obtained as the result of an unreasonable search and seizure."

In *State* v. *Chuchola* (—— Del. ——; 120 Atl. 212) the court said: " Upon what theory of justice or reason has anyone the right to have returned to him money he has stolen, a weapon with which he has committed a murder, or intoxicating liquor he has in his possession in violation of law, no matter by what means it was found and seized?   If the liquor must be destroyed the result is that the person who made the illegal search is not punished, but the State is punished in being deprived of the use of the liquor to secure the wrongdoer's conviction.   We do not believe the Constitution makers meant to be so solicitous for the interests of a person accused of crime as to exclude from the jury, not only the evidence of his guilt, but the thing the possession of which constitutes his crime.   Such an article is in theory, and ought to be in fact, whenever and however taken, forfeited by the accused, and in the custody of the law."

In *Rosanski* v. *State* (106 Ohio St. 442; 140 N. E. 370) the court

* See 1 U. S. Stat. at Large, 29, chap. 5; Id. 43, § 23 *et seq.*—[Rep.

said: " The courts of many of the States of the Union have had occasion to deal with this exact question, and in more than a score of the States it has been emphatically declared that intoxicating liquors, stolen property, gambling paraphernalia, burglar's tools, narcotic drugs, counterfeiting devices, lottery tickets, and other kinds and classes of contraband property, the mere possession of which constitutes an unlawful act, may not be ordered returned, even though such property has been taken without lawful process from persons accused of crime; and in only three or four States has a contrary rule been declared. To enter upon a discussion of all of these cases, or even to give a list of them, would extend this opinion to unreasonable proportions. In those States where a contrary rule has been declared it appears that they have attempted to follow an erroneous interpretation of certain decisions of the Supreme Court of the United States."

In so far, therefore, as the blackjack is concerned, because of the contraband nature of the article, the motion, even under the rule laid down in the Supreme Court of the United States, would not be granted.

We are, therefore, brought finally to a consideration of the motion in so far as the bag and hat are concerned. In this connection it is noted that the decisions of the Supreme Court of the United States on the Fourth Amendment to the Constitution of the United States, while entitled to the utmost deference because of the high source from which they emanate, nevertheless are not binding upon our courts. In *Matter of Mohawk Overall Co.* (210 N. Y. 474, 478) WILLARD BARTLETT, Ch. J., said: " The first question of this character presented in behalf of the appellants is the proposition that the subpœna *duces tecum* is a violation of the Fourth Amendment to the Constitution of the United States, namely: ' The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.' As to this point it suffices to say that the first ten amendments to the Federal Constitution have repeatedly been held to be ' restraints upon the power of Congress and not restraints upon the power of the States.' "

Whether the courts of this State will suppress such evidence or deny the motion, leaving the one who wrongfully obtains such evidence to be dealt with according to his deserts, seems to be still an open question in this State. In *People* v. *Chiagles* (*supra*) CARDOZO, J., said: " The question has been much debated, and may still be open in this State, whether the evidences of guilt will be turned back to the prisoner if the search producing them was lawless (4 Wigmore Evidence, § 2184; *Weeks* v. *U. S., supra; Gouled*

v. *U. S., supra; Burdeau* v. *McDowell,* 256 U. S. 465; cf. *People* v. *Adams,* 176 N. Y. 351)."

We approach the consideration of this question realizing the force of what has been said in favor of either contention and the weight of judicial authority to be found on either side. Fourteen States of the United States have followed the reasoning of the United States Supreme Court and have suppressed such evidence, while twenty-two of the States have taken a contrary view.

For some reason not easily ascertainable, a great deal of asperity appears in the writings on this subject, particularly among those who can write free from any responsibility except the judgment of their readers. We prefer to hold with the rule which denies the suppression of the evidence, since in so holding there is a greater opportunity for exact justice to be meted out in accordance with the particular wrong with which the court is asked to deal. To disregard competent evidence brought to the attention of the court, in a desire to punish the person who has obtained the same illegally, and to discourage unlawful search and seizure, would seem to be placing a disproportionate value on the prohibition or inhibition against unreasonable search and seizure. Such a doctrine unnecessarily ties the hands of a court. To be unable to find a murderer guilty, although competent evidence is before the court to warrant a conviction, for the reason that someone else is guilty of petit larceny in connection with the obtaining of such evidence, seems a handicap rather than a help to the administration of justice.

As was said in *Commonwealth* v. *Wilkins* (243 Mass. 356; 138 N. E. 11): " Courts do not impose an indirect penalty upon competent evidence because of illegality in obtaining it. ' An ordinary police officer is not regarded as the agent of government if he acts outside the ·scope of his authority in seizing tangible evidence of crime. He does not carry with him the support of the government, but incurs personal liability if he fails to keep within the bounds of his duty. Outside those bounds he has no more color of authority than a private individual. Whether he commits a crime or a civil wrong, the offending officer alone is responsible. * * * He may be brought to court to answer for his wrong either civilly or criminally. But his misconduct ought not to hamper the government in the enforcement of laws and the preservation of order."

To refuse to suppress such competent evidence is to leave the court in a better position to punish both crimes according to their just deserts. It would seem of greater importance to the State and a better example to its citizens that all crime which has been brought to the attention of the authorities should receive the punishment which it deserves, rather than that the court should .

be compelled indiscriminately to free all criminals who are fortunate enough to have competent evidence, which is necessary to establish their guilt, illegally taken from them, especially when they may obtain exact justice, both criminal and civil, for any wrong done them.

It follows that the judgment and order should be affirmed.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Judgment and order affirmed.