OPINION OF THE COURT
William D. Friedmann, J.
The sole issue, raised by the District Attorney’s arraignment-stage oral application,[1] is whether this court may properly order the (postarrest/preindictment)[2] in-court seizure of defendant’s footwear for the purpose of enabling the New York City Police Department comparison with a sneaker “print” allegedly left by defendant atop a bank counter during the commission of a robbery therein.
Defendant juvenile, age 15, was arrested on August 6, 1981, moments after his involvement with two other juvenile accomplices in a robbery of a Chemical Bank branch *493 located in the Riverdale section of The Bronx.[3] He was charged in a criminal court felony complaint with violating the following sections of the Penal Law: section 160.15 (robbery in the first degree), section 160.10 (robbery in the second degree), section 265.09 (criminal use of a firearm in the first degree) and section 265.01 (criminal use of a weapon in the fourth degree).[4]
At defendant’s arraignment on August 7, 1981, the District Attorney orally moved this court for an order authorizing the in-court seizure of defendant’s sneakers as evidence based upon police representations made for the first time shortly before arraignment that sneaker “prints” had been recovered and preserved by investigating officers.[5]
The defendant opposed the motion arguing (1) that the proper procedure for seizing the sneakers as evidence was by written demand to produce pursuant to CPL 240.30, (2) that it was not the proper function of the court to assist the District Attorney in preparing and prosecuting his case, and (3) that the seizure would be violative of defendant’s Fourth and Fifth Amendment rights.
At the conclusion of argument, the court made a finding that, in light of the existence of exigent circumstances, the sneakers had a logical and probative value in determining the guilt or innocence of the defendant and ordered the removal of defendant’s sneakers from his person as requested by the District Attorney. Said sneakers were then surrendered to and vouchered by the representative of the New York City Police Department present in court who, *494 pursuant to court order, provided defendant with a receipt. The Department of Correction was further ordered to provide defendant with substitute footwear.
Following is the court’s reasoning which was not modified by the receipt of any postargument memoranda by either side.
SEIZURE PROCEDURE
Defendant resisted the People’s application on the ground that at this postarrest preindictment stage a written or formal demand to produce the defendant’s sneakers was the proper mechanism for seizure. This court does not agree.
Although the discovery statute contained in our Criminal Procedure Law sets up a demand mechanism for the inspection of certain existing tangible personal or real property, it is unimaginable that the Legislature intended to restrict the discovery process by imposing a writing requirement on the party seeking discovery in a situation where delay might very well impair the integrity of the evidence sought. On the contrary, the new reciprocal discovery article was designed to “eliminate delays, paper work, red tape and [to] encourage speedier and * * * juster resolutions of many criminal proceedings” (See Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 240.10, p 311, 1972-1980 Supplementary Pamphlet).
More importantly, the service by the District Attorney of a demand for discovery would have constituted a nullity if attempted at the arraignment stage of this proceeding. The discovery statute permits discovery on demand only where a defendant is charged by indictment, superior court information, prosecutor’s information or information (CPL 240.20, subd 1); there is no provision for discovery upon a felony or misdemeanor complaint (People v Webb, 105 Misc 2d 660). As a consequence, prosecutorial discovery was not available against this defendant who was charged by felony complaint and awaiting possible felony hearing or Grand Jury consideration.
Further, the defendant’s contention that seizure of the sneakers should have been attempted by way of written *495 request fails to consider the power of this court to issue a search warrant pursuant to CPL article 690. CPL 690.10 expressly sanctions the seizure of personal property upon application of a District Attorney pursuant to a search warrant if there is reasonable cause to believe that it constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense. However, given both the urgency of this particular seizure and its in-court nature, any court-imposed requirement that the People proceed by written search warrant to seize evidence then in plain view would have been inappropriate.[6] Not only was a search warrant not required to unearth the evidence in question, but also such an application would have impeded the truth-finding function of our criminal justice system by exposing potentially admissible evidence to loss or alteration and caused the District Attorney to gather evidence by the more difficult of two methods. Such a requirement this court would not impose.
SEIZURE — IMPROPER ASSISTANCE TO DISTRICT ATTORNEY
Defendant further resisted the People’s application by arguing that it was not the proper function of the court to assist the District Attorney in the preparation and prosecution of his case by the in-court seizure of defendant’s sneakers. A seizure order and effectuation in open court would, according to this argument, constitute improper assistance and prejudice the court’s impartiality. It is the opinion of this court that these contentions are wholly without merit.
In the American system of justice, criminal procedure and substance rest upon a foundation of constitutional and statutory expression. In a case-by-case application, Judges are called upon to interpret and apply various statutes in order to resolve, among other things, individual conflicts arising out of the adversary relationship, between the criminally accused and the State.
*496 The paramount duty of the court, in resolution of these conflicts, whether concerning a seizure application for evidence or the admissibility of certain evidence, is to assure that justice is done within the context of constitutional and statutory expression, rules of evidence and relevant decisional precedents. This inquiry and implementation, existing at each and every stage of a criminal proceeding, could conceivably be looked upon as assisting one party or the other at any given stage. However, any advantage to a party to a proceeding, which might arise as a result of a court order or decision is necessarily inescapable in our adversarial system of criminal justice and must not be construed, without any further indicia of bad faith, bias or prejudice, as a breach of the court’s duty of impartiality. (See Berman and Greiner, Nature and Functions of Law [3d ed], p 209 et seq.)
FOURTH AND FIFTH AMENDMENT CLAIMS
Defendant also advanced the following two arguments in opposition to the seizure application: (1) that the taking of the sneakers would constitute an unconstitutional seizure violative of defendant’s Fourth Amendment right to be free from unreasonable searches and seizures and (2) that the taking would force defendant to surrender his Fifth Amendment freedom from self incrimination.
Concerning defendant’s Fifth Amendment claim, it is the opinion of the court that the seizure of the sneakers falls outside the scope of Fifth Amendment guarantees in that the seizure does not involve testimonial compulsion. (United States v Dionisio, 410 US 1; Holt v United States, 218 US 245.) Simply put, absent a substantial or dangerous intrusion upon the person of the accused,[7] the compelled production of real or physical evidence does not violate the Fifth Amendment (Schmerber v California, 384 US 757; Gilbert v California, 388 US 263; People v Goldberg, 19 NY2d 460).
The time-honored case oí People v Van Wormer (175 NY 188) decided in 1903 best illustrates the constitutional distinction between the compulsory taking of testimonial *497 and real evidence. In Van Wormer, after the arrest of the defendants, their shoes were taken from them and placed in the footmarks leading to the house of a murder victim made in the newly fallen snow on the night of the murder. The shoes were found to correspond in all respects with the footprints, and evidence of this fact was later admitted at the trial. Addressing the defendant’s contention that the seizure of the shoes compelled the defendants to be witnesses against themselves in violation of their constitutional safeguards, the Court of Appeals, upholding the seizure, held that the Fifth Amendmént protection “prohibited ‘the compulsory oral examination (doubtless written examination also) *** for the purpose of extorting unwilling confessions or declarations implicating them in crime,’ but that ‘a murderer may be forcibly taken before his dying victim for identification;’ ‘a thief may be forcibly examined and’ ‘a prisoner may be examined for marks and bruises and then they may be proved upon his trial to establish his guilt.’” (People v Van Wormer, supra, at p 195.)
In the case at bar, the compelled production of defendant’s sneakers in no way compromised his Fifth Amendment right. The defendant was not forced to make an oral or written declaration, implicating himself in crime or forced to tolerate a substantial and dangerous intrusion by government of his person. Accordingly, this court was not without authority to order the sneakers seized as evidence.
Concerning defendant’s claim that the warrantless in-court seizure of defendant’s sneakers would violate his Fourth Amendment right to be free from unreasonable searches and seizures, this court finds the argument misplaced and without merit. The in-court taking of defendant’s sneakers does not rise to the level of a seizure within the meaning of the Fourth Amendment. That amendment protects an individual’s reasonable expectation of privacy in places searched. (Rakas v Illinois, 439 US 128; United States v Salvucci, 448 US 83; Rawlings v Kentucky, 448 US 98; People v Buckley, 81 AD2d 511.) In the case at bar, the defendant had no logical expectation of privacy violated by the seizure since his sneakers were in plain view. (Katz v United States, 389 US 347; Ker v California, 374 US 23; *498 People v Brosnan, 32 NY2d 254.) As a result, they were properly seizable.

. The instant application by the District Attorney made at Part AP 10, a juvenile arraignment part of Bronx Criminal Court, became necessary during defendant’s arraignment on August 7,1981, because the sneakers which the defendant was wearing at the time of the robbery and in court were not seized by the police because of lack of information when defendant was arrested on August 6, 1981.

. The defendant and two accomplices were subsequently indicted by a Bronx County Grand Jury on August 12,1981 and charged with robbery in the first degree, robbery in the second degree and criminal use of a firearm in the first degree.

. A police undercover team anticipating a robbery at a different bank happened to be in the neighborhood of this Chemical Bank branch at the time of the robbery in question. The crowd which developed at the nearby Chemical Bank attracted police attention and resulted in the arrest of three suspects.

. Jurisdiction vested in the Bronx Criminal Court under New York State’s juvenile offender statute. (See Penal Law, §30.00, subd 2.) Although bank robbery is also a Federal offense under section 2113 of title 18 of the United States Code, a juvenile alleged to have committed an act of juvenile delinquency is not proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate court that the juvenile court or other State court (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to the alleged act, or (2) does not have available programs and services adequate for the needs of juveniles. (US Code, tit 18, § 5032.)

. The sneaker “print” was discovered by the New York City Joint Bank Robbery Task Force. This unit, made up of detectives from the New York City Police Department and Federal agents from the FBI investigate all armed bank robberies which occur in the City of New York. The “print” was preserved by use of photo and chemical analysis.

. A “search” is defined as an examination of a person’s house or other building or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property or some evidence of guilt to be used in the prosecution of a criminal action (Black’s Law Dictionary [2d ed]).

. For examples of such intrusions which offend due process, see Rochin v California (342 US 165, stomach pump, drugs; People v Smith, 80 Misc 2d 210, surgery, bullet removal).