OPINION OF THE COURT
Stanley B. Katz, J.
May the District Attorney obtain blood, urine and medical *785 records by virtue of a Grand Jury subpoena issued within 24 hours of defendant’s arrest when the defendant is unconscious in a hospital?
This issue was presented to the court in the present action. Defendant maintains that the People’s acquisition of these items constitutes an illegal seizure; the prosecutor argues that their actions violated no legal mandates.
I
BACKGROUND
On May 8, 1993, the police were summoned to a specific apartment in the Queensbridge Housing Development in response to repeated cries for help. Upon arrival, the officers found a scene of violence at this residence. A young woman, Stephanie Pagan, 26 years of age, and Karisa Ruffin, an infant, were dead as a result of stab wounds. A second child, Melissa Joy Rodriguez, and an adult, Ronicia Rodriguez, were seriously injured but still alive. Later, the wounded child died of her injuries.
As they investigated, the police noticed a trail of blood and discovered bloody clothing. They followed this trail and located the defendant on the building roof. Once defendant observed their presence, he jumped from the roof and landed in a nearby grassy courtyard. As a result of his actions, the defendant was seriously injured and required immediate medical attention. He was taken, unconscious, to Elmhurst General Hospital and admitted at 6:45 a.m. on May 8, 1993. The following day, May 9, he was formally arrested based on the homicidal acts. He was still comatose at this time.
The next day, May 10, the District Attorney’s office issued a Grand Jury subpoena duces tecum commanding Elmhurst General Hospital to appear with their records before the Grand Jury on that date as a witness in a criminal action against defendant. This subpoena was served on the hospital authorities on May 12 and a detective received a vial of blood (taken on May 8) and a urine specimen (taken on May 11). These items were vouchered and delivered to the Medical Examiner’s office. On May 13, the hospital authorities also turned over the defendant’s medical records from May 8 through May 13.
Defendant now contends that the blood and urine samples as well as his medical records were illegally obtained and *786 must be suppressed. He also requests suppression of any results of any toxicological examinations performed on his blood and urine based on the fact that these items were the fruit of the poisonous tree.
II
defendant’s fourth amendment claim
The District Attorney in this case obtained three items from Elmhurst Hospital. They were a vial of blood, a second vial containing a urine specimen and copies of defendant’s medical records. By now it is settled law that a hospitalized defendant retains a Fourth Amendment right in blood and urine samples (cf., People v Natal, 75 NY2d 379). The People also obtained hospital records so the manner of that acquisition is also covered by the Fourth Amendment, although the use of those records is governed by the patient-physician privilege. Thus, it is clear that defendant has a constitutional right regarding the items taken from Elmhurst Hospital. This being the case, the court turns to the defendant’s claim that the District Attorney acted without lawful authority.
III
CATEGORIES of discovery
A review of the law in this area indicates that a District Attorney’s power to obtain items falls within three broad areas. These are: (1) investigatory discovery; (2) discovery at the Grand Jury level; and (3) statutory trial discovery.
The first category, investigatory discovery, deals with situations in which the People feel that a specific individual possesses material necessary to advance a criminal investigation. However, at this stage of the proceedings, no arrest has been made nor has any criminal action been instituted against such individual. To secure such potential evidence a District Attorney may request a search warrant (CPL 690.05 [2] [a]). If the evidence is of such a nature that it cannot be readily obtained by "a search * * * of a designated person”, a court may permit such acquisition by virtue of a written or oral order. Thus, in Matter of Abe A. (56 NY2d 288, 296), the Court of Appeals compelled a "suspect” to furnish a blood sample even though he was not arrested. Similarly, in People v Moselle (57 NY2d 97), our highest Court held that blood samples taken from drivers without their consent were in *787 violation of the applicable motor vehicle statute and inadmissible at trial unless the same were required pursuant to statute or an authorized court order.
The second category deals with discovery during Grand Jury proceedings. CPL 610.20 gives the District Attorney broad powers to issue subpoenas. Subdivision (2) reads as follows: "A district attorney * * * as an officer of a criminal court in which he is conducting the prosecution of a criminal action or proceeding, may issue a subpoena of such court, subscribed by himself, for the attendance in such court or a grand jury thereof of any witness whom the people are entitled to call in such action or proceeding.”
A more limited subpoena power is permitted in CPL 190.50 (3) which indicates: "The grand jury may cause to be called as a witness any person believed by it to possess relevant information or knowledge. If the grand jury desires to hear any such witness who was not called by the people, it may direct the district attorney to issue and serve a subpoena upon such witness, and the district attorney must comply with such direction.”
The final area deals with the People’s statutory right to discovery as set forth in CPL 240.30 and, more particularly, CPL 240.40. The first statute gives the People limited reciprocal rights with regard to defendant’s tests, written reports or photographs. These rights are restricted to those items which the defendant intends to introduce at trial and such a statute is of limited use to the People in their direct case.
The second section, CPL 240.40, permits discovery by court order and this gives the District Attorney far more power in obtaining items from the defendant. Subdivision (1) sets forth the jurisdictional basis for such a discovery order and reads: "Upon motion of a defendant against whom an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor is pending.”
Paragraph (b) permits the court to obtain nontestimonial evidence and a pertinent portion of this statute states:
"Such order may, among other things, require the defendant to:
"(i) Appear in a line-up;
"(ii) Speak for identification by witness or potential witness;
"(iii) Be fingerprinted;
*788 "(iv) Pose for photographs not involving reenactment of an event;
"(v) Permit the taking of samples of blood, hair or other materials from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury thereto;
"(vi) Provide specimens of his handwriting;
"(vii) Submit to a reasonable physical or medical inspection of his body.”
Significantly, subdivision (2) (b) provides the People with broad scope in regards to obtaining other forms of nontestimonial evidence since the phrase "among other things” indicates that enumerated items do not exclude similar acquisitions of such evidence.
IV
THE APPLICABLE LAW
The District Attorney maintains that since the defendant was arrested, but no accusatory instrument was filed, the prosecution could not obtain a statutory court order. Thus, the only remedy was to obtain the items in furtherance of a potential Grand Jury investigation. In considering this argument, it is clear that the District Attorney is correct in his initial premise. Normal statutory discovery was not available because neither an indictment nor information was pending in this case. At most, the defendant would have been the subject of a felony complaint which does not appear to have yet been filed. The cases are clear that there is no CPL 240.20 discovery based on a felony complaint (see, People v Ramirez, 129 Misc 2d 112; People v Webb, 105 Misc 2d 660). However, this does not prevent a court from granting discovery under its inherent general powers (Judiciary Law § 2-b [3]). The authority to grant discovery is therefore not limited to CPL 240.40 since subdivision (2) of that statute contemplates the issuance of discovery orders in situations not covered by article 240. Thus, subdivision (2) cautions: "This subdivision shall not be construed to limit, expand, or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States.”
In Matter of Abe A. (supra), the Court granted discovery of *789 nontestimonial evidence when the subject of such discovery was merely a suspect, ruling that a court of general jurisdiction does not have to wait for a formal charge of committing a crime before a discovery order is granted. Since it appears that the defendant in this case had been arrested, but not yet formally charged, the District Attorney could have secured such a "suspect” order. To the same effect, a criminal court upheld the court’s power to issue a postarrest preindictment discovery order in People v Delgado (110 Misc 2d 492) when it directed an in-court seizure of defendant’s footwear for the purpose of preserving a sneaker print. Therefore, it would appear that while trial discovery would not lie in the present case, the People could still have petitioned the court for a preindictment discovery order after setting forth appropriate safeguards of the defendant’s rights.
V
THE GRAND JURY SUBPOENA
This leads to the present. Was the issuance of a Grand Jury subpoena duces tecum valid under the circumstances of this case? The facts indicate that the defendant was hospitalized on Saturday, May 8; arrested on Sunday, May 9; and a Grand Jury subpoena issued on Monday, May 10. The record further indicates that no court proceedings had been initiated due possibly both to the speed of the investigation and the comatose state of the defendant. Certainly no Grand Jury proceeding had been started when the subpoena was issued so the notation for the hospital to appear on May 10 was an impossibility. In effect, the subpoena was an office subpoena, that is a mandate requiring the party summoned to appear at the District Attorney’s office for the sole purpose of furthering an investigation. Neither case nor statutory law grant such authority to the District Attorney. The People have no right to issue a subpoena for the sole purpose of securing evidence in a pending case. The Court of Appeals strongly condemned such a practice when it stated in People v Natal (supra, 75 NY2d, 384-385):
"Subpoenas, of course, are process of the courts, not the parties (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.20, at 264; see, CPL 610.10 [2], [3]; Hagan, Impounding and the Subpoena Duces Tecum, 26 Brooklyn L Rev 199 [I960]). While by statute it is the District Attorney who issues a subpoena duces tecum (CPL *790 610.25 [1]), the subpoena is nevertheless a mandate of the court issued for the court (see, Matter of Spector v Allen, 281 NY 251, 259; People ex rel. Drake v Andrews, 197 NY 53).
"It has long been recognized that District Attorneys may not issue subpoenas except through the process of the court, and they exercise the power to compel witnesses to produce physical evidence only before a Grand Jury or a court where a proceeding is pending (CPL 610.20; People v Hamlin, 58 AD2d 631, 632; People v Boulet, 88 Misc 2d 353, 354; People v Arocho, 85 Misc 2d 116). CPL 610.25 (1) makes clear that where the District Attorney seeks trial evidence the subpoena should be made returnable to the court, which has 'the right to possession of the subpoenaed evidence.’ It is for the court, not the prosecutor, to determine where subpoenaed materials should be deposited, as well as any disputes regarding production (CPL 610.25; People v Hasson, 86 Misc 2d 781; Matter of Nwamu, 421 F Supp 1361 [SD NY]).
"By circumventing the court, the District Attorney avoided all the protections provided against abuse of the subpoena process, and succeeded in transforming a court process into a function of his own office (see generally, American Bar Assn, Standards Relating to Administration of Criminal Justice, Prosecution Function § 3.1 [d] [1974]). Such conduct is all the more disturbing in light of apparent prior admonitions by Trial Judges to the District Attorney concerning similar misuse in other cases.”
Nor can the People be excused by virtue of "exigent circumstances.” The facts show that the items sought would not have been disposed of or destroyed or even tampered with since they were simply hospital records and would have been available for future use. Also, there was enough time to have secured a proper court order (see, People v Hayes, 154 Misc 2d 429, 433). Even if the tests and records were intended for the Grand Jury, the court could have granted such an order since the "Supreme Court has the authority to issue an order in furtherance of a Grand Jury investigation even though no arrest or indictment has yet occurred (Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576, opp dsmd 38 NY2d 923; see, People v Perri, 72 AD2d 106, 112, affd 53 NY2d 957)” (see, People v Middleton, 54 NY2d 42, 47).
Based on the above, the subpoena must be regarded as a nullity for Grand Jury purposes and this court concludes that the two vials and the hospital records were obtained in violation of defendant’s Fourth Amendment rights.
*791 VI
SANCTIONS
This court finds that the vial of blood and the specimen of urine and the hospital records from May 8 to May 10 were obtained by virtue of an improper subpoena and thus a violation of defendant’s Fourth Amendment rights. Consequently, these items must be suppressed as evidence and are inadmissible at trial. Further, any tests based on the vials must also be suppressed. As for the hospital records, since they were also improperly seized, these items must be suppressed as well as any findings that flow directly from these records.