THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORRIS RICHTER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RICHTER'S JEWELERS, INC., MORRIS RICHTER and ALAN CUTLER, Appellants.

First Department, April 9, 1943.

*Melvin A. Albert* of counsel (*Milton C. Weisman* with him on the brief; *Weisman, Celler, Quinn, Allan & Spett,* attorneys), for appellants.

*Bernard L. Alderman* of counsel (*Stanley H. Fuld* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

CALLAHAN, J. Two female inspectors of weights and measures attached to the Department of Markets of the City of New York observed a diamond ring displayed in a window of a Fifth avenue jewelry shop. There was a sign alongside of the ring which read " 1 Ct. Perfect Diamond . . . Platinum Setting $265." Concededly " 1 Ct." meant " one carat." Suspecting that the ring might weigh less than one carat, and, because of the price asked, that the diamond might not be perfect, the inspectors entered the store and conversed with a clerk, defendant Cutler.

Cutler took the ring and display card from the window and permitted the inspectors to examine them. The ring had a tag attached to it on which a price of $350 was marked. The clerk said that the price was reduced from $350 to $265 because the ring was " on sale." He repeated the claims that were on the display card as to the weight of the stone, and said that the diamond was perfect. The inspectors then identified themselves, and one of them seized the ring and put it on one of her fingers. She kept the sign in her hand. Thereupon defendant, Morris Richter, president of the corporate defendant which was the owner of the store, was called to the counter. He demanded the return of the ring and sign. The inspectors refused to return them, asserting that they were within their rights in seizing the property in order to verify their suspicions as to the falsity of the advertising. For the purpose of this appeal we will assume that it was part of the official duties of the inspectors to investigate the matter of false advertising.

The inspectors conceded that at that time they did not intend to make an arrest. They admitted they were then unable to tell whether Penal Law, section 421, which prohibits false advertising, had been violated, and would not know whether this was so until the ring had been examined by an expert, and the stone weighed. In order to verify their suspicions that a crime might have been committed, they expressed their intention to take the ring out of the store, and to bring it to the office of an expert jeweler selected by their department. The expert would have had to remove the stone from the ring in order to weigh it.

The inspectors offered to give Richter their receipt for the property, and promised to return it if there had been no false advertising. Richter protested that the inspectors had no right to take such procedure. An altercation arose in connection with which Richter forcibly took the sign out of the inspector's hands. He also attempted to force the ring from her finger. These acts were accompanied by considerable violence, but all of the force used was directed towards securing the return of the property. Eventually Richter returned the sign and permitted the inspectors to take away the sign and the ring. Thereupon the ring was taken to the city expert, and the diamond found to weigh only three quarters of a carat. It had several imperfections in it.

There thus had been an actual violation of Penal Law, section 421, at the time when the inspectors seized the property. A summons was later issued directing Cutler, Morris Richter, and the Richter Jewelry Company to appear before a magistrate to

answer a charge of violating Penal Law, section 421 (False Advertising). A summons was also issued for Morris Richter, charging him with assault and with unlawfully interfering with a public officer in the performance of her duty. (Penal Law, § 1851.)

All of the defendants were eventually convicted in the Court of Special Sessions of the violation of section 421. Morris Richter, in addition, was convicted of violating section 1851. He was acquitted on the assault charge. This appeal was then taken from both judgments of conviction.

We find that the evidence adduced upon the trial was ample to sustain the conviction of the defendants for violation of section 421. The only question that we need to consider in connection with the correctness of that judgment is whether the ring and the sign were properly received in evidence against the defendants.

We are required to hold that, under the law of this State, both the sign and the ring were competent evidence against defendants, even though the seizure of said property had been unlawful. (*People* v. *Adams,* 176 N. Y. 351; *People* v. *Defore,* 242 N. Y. 13.) Accordingly, the judgment convicting the defendants of violating section 421 must be affirmed.

A different problem is presented with respect to the correctness of the conviction of Morris Richter of interfering with a public officer. Section 1851 of the Penal Law provides that " A person who, in any case or under any circumstances not otherwise specially provided for, wilfully resists, delays, or obstructs a public officer in discharging, or attempting to discharge, a duty of his office, is guilty of a misdemeanor."

It is quite evident that the conduct of Morris Richter would not be a violation of this statute, if the inspectors were not performing a duty of their office, but were committing a trespass in seizing the ring and sign (*People* v. *O'Connor,* 257 N. Y. 473; Penal Law, § 216, subd. 3; Code Crim. Pro. § 80).

The Constitution of the State of New York, since its recent amendment in 1938, now proscribes unlawful searches and seizures (art. I, § 12). A similar provision of statutory law was previously found in section 8 of the Civil Rights Law. That statute still remains in force and reads as follows: " § 8. Right of search and seizure. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants can issue but upon probable cause supported by oath or affirma-

tion, and particularly describing the place to be searched, and the persons or things to be seized.''

Our task is to ascertain and state the power of a public officer with respect to the seizure of property which he suspects will show the commission of a misdemeanor, when such seizure does not accompany an arrest, or is not based on a search warrant. We deem that a seizure such as was made here was not lawfully made, even though the property was openly displayed and no search therefor was necessary, and although a misdemeanor had actually been committed of which crime the property would have been competent evidence.

The immunity granted by law from search and seizure is not from all search and seizure, but from such as are unreasonable in the light of common-law traditions. (*People* v. *Chiagles,* 237 N. Y. 193.) One exception to the rule of immunity against unlawful search and seizure is firmly established, and that is that when an accused is legally arrested he may be searched to discover and seize the fruits and evidence of crime. (*People* v. *Chiagles, supra*; *Weeks* v. *United States,* 232 U. S. 383.) '' Search of the person is unlawful when the seizure of the body is a trespass, and the purpose of the search is to discover grounds as yet unknown for arrest or accusation * * *. Search of the person becomes lawful when grounds for arrest and accusation have been discovered, and the law is in the act of subjecting the body of the accused to its physical dominion.'' (*People* v. *Chiagles, supra.*)

The rule concerning the right to search and seizure contemporaneously with an arrest is stated in *Agnello* v. *United States* (269 U. S. 20, at p. 30) as follows: '' The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted.'' (See, also, *Weeks* v. *United States supra,* at p. 392; *Smith.* v. *Jerome,* 47 Misc. 22.)

The rule thus stated as to the right of the search of the person contemporaneously with an arrest would seem to apply with equal force to seizure of property to be used as evidence of crime. Therefore, when an accused is legally arrested, the fruits and evidence of the crime may be seized. But such seizure of property would be unlawful when the purpose is merely to discover possible grounds as yet unknown for arrest or accusation. When no arrest is being made, seizure, like search, is to be con-

fined to cases where a search warrant is lawfully issued. (Code Crim. Pro. § 792.)

Distinctions have at times been made with respect to the right of seizure of articles deemed contraband, such as goods liable to government duties, stolen goods, or nuisances *per se* subject to destruction, such as dangerous weapons unlawfully possessed. The seizure of such articles was said to be authorized at common law or by ancient statutes. (*Boyd* v. *United States,* 116 U. S. 616.) Whether seizure of such articles might be justified without a warrant, even though no lawful arrest is being made, is not the question before us. The property here was not contraband. It was innocent of any intrinsic invalidity, and would only be subject to seizure in order to support a charge of its use in violation of law.

Applying to the present situation the general rules of law above outlined, it would seem clear that the ring and the sign might have been seized as the basic evidence of the crime, if a lawful arrest was being made of defendants, or any of them, at the time. Such an arrest of defendants by the inspectors was, in fact, justified, for a misdemeanor had been committed or attempted in their presence. (Code Crim. Pro. §§ 177, 183.) But the officers were not aware of that fact. Apparently they felt that they lacked proof of probable cause. They would not be possessed of sufficient information to advise them as to whether to make an arrest until the ring had been examined by an expert. It might well be that a magistrate, upon an application for a search warrant based on the evidence in their possession at the time of the seizure, would hold that they did not have probable cause to suspect the commission of a misdemeanor. Under the common law a search warrant would not be properly issued merely to procure evidence of a suspected crime. (*Entick* v. *Carrington,* 19 Howell's State Trials, 1030, 1066.) Likewise our Constitution and our statutes require submission of proof of probable cause before issuance of such a warrant. (State Const. art. I, § 12; Civil Rights Law, § 8; Code Crim. Pro. §§ 792, 793.)

The inspectors could not lawfully seize the property in question for the purpose of merely verifying their suspicion. This would not be a reasonable seizure. That a misdemeanor had in fact been committed would not alter the rule. To hold otherwise would be to apply the doctrine that the end justifies the means. The protection inherent in the Civil Rights Law is the antithesis of such a doctrine.

It has been said that the right to search and the validity of a seizure are not dependent on the right to arrest. They are said to depend on the reasonable cause the seizing officer has for belief that the article or the vehicle transporting it offended against the law. (*Carroll* v. *United States,* 267 U. S. 132.) An officer, under our statutes, is required to act on probable cause where he secures a search warrant. To permit him to seize property, unless in connection with an arrest, on less than this, without a warrant, would be an anomaly. The right to arrest for a misdemeanor depends on the commission or attempt to commit the crime in the officer's presence. (Code Crim. Pro. § 177.) But the seizure under the present circumstances, disassociated from an arrest, or without a search warrant, appears to have no support under either the common law or the statutes of this State.

If suspicion alone would warrant a seizure of merchandise, then seizure by the inspectors to verify their suspicions might have been reasonable, even though no crime had, in fact, been committed. The possibility of disorder and of injury to merchants would be great if they are to be deprived of their property, in order that it be carried off for investigation on mere suspicion. The efforts of public officers to bring the guilty to punishment are praiseworthy, but their efforts are not to be aided by sacrificing the great fundamental rights assured citizens by the Constitution. (*Weeks* v. *United States, supra.*) That detection of crime might be simplified if basic rights are disregarded is no reason for surrender of these rights. We deem that more than suspicion is required to justify a seizure such as we have here. The law does not make the test of the lawfulness of a seizure the actual guilt or innocence of the owner. It justifies the taking only in connection with an arrest — the subjection of the person charged with crime to the domination of the law. The alternative is that a search warrant is required. Aside from the protection of the citizen from unlawful trespass, there are many practical reasons why the right of seizure should be limited to occasions where arrests are made or search warrants issued. Valuable property should not be seized unless resort to a court or police station-house follows promptly.

We cannot justify the unlawful seizure by the inspectors by reference to the unlawful advertising on the part of the owner of the property. The question for determination is whether there was an unlawful interference with the officers when they attempted to take away the ring and sign. In the absence of a lawful seizure there was no unlawful interference.

Morris Richter was improperly convicted of resisting an officer, and that conviction should be reversed, and the information charging that crime should be dismissed, and the fine remitted. Otherwise the judgments appealed from should be affirmed.

TOWNLEY, GLENNON and COHN, JJ., concur; MARTIN, P. J., concurs in affirmance of the judgments of conviction of all defendants of the crime of publishing a misleading advertisement, but dissents from reversal of the judgment of conviction of defendant Morris Richter of the crime of resisting an officer and votes to affirm said judgment.

Judgment convicting defendant Morris Richter of resisting a public officer in the performance of a duty of his office reversed, the information dismissed and the fine remitted. Judgment convicting defendants Richter's Jewelers, Inc., Morris Richter and Alan Cutler of publishing a misleading advertisement unanimously affirmed.