In the Matter of WILLIAM KROLICK, Petitioner, *v.* ROBERT O. LOWERY, as Fire Commissioner of the Fire Department of the City of New York, et al., Respondents.

In the Matter of FRED E. VYSE, Petitioner, *v.* ROBERT O. LOWERY, as Fire Commissioner of the Fire Department of the City of New York, et al., Respondents.

First Department, June 26, 1969.

318

*Jay Leo Rothschild* of counsel (*Edward M. Edenbaum*, attorney), for petitioners.

*Edmund B. Hennefeld* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondents.

STEVENS, P. J.  These are article 78 proceedings brought separately by each petitioner to annul a determination of respondent Commissioner in which each was subjected to a fine and, in one instance, a two-day forfeiture.  While factually dissimilar, common questions of law are posed.  Inherent in the issues is the underlying question whether a directive by the Uniformed Firemen's Association (UFA) to its members shall take precedence over regulations and orders of the Fire Department.  In short, what force shall control the policies of the department.  The premise upon which the directive is based is that the applicable regulations and orders involve an infringement of constitutional rights.  Questions, minor to the argument, but ever present in an article 78 proceeding of this nature, are whether there is substantial evidence to support the determinations, and whether there is a rational or reasonable basis for the rule or order.

The facts in each case will be detailed separately prior to any consideration of the legal arguments advanced.

Petitioner Vyse, a fireman in the City Fire Department, reported for duty November 3, 1967, at about 5:30 P.M. At about 7:47 P.M. in response to a fire alarm he took his place in his bucket seat on the rear of the fire apparatus responding to the alarm. Vyse failed to buckle his seat belt as required by the regulations and, after the vehicle had proceeded some distance, he fell from his seat to the ground, injuring himself. Vyse testified later that he was trying to wave away an oncoming car. At the hospital to which he was taken, one of the medical officers of the Fire Department, after smelling Vyse's breath, requested that Vyse permit the taking of a blood sample to test alcoholic content. Petitioner refused to accede to the request and persisted in his refusal when ordered by his superior officers to permit the taking of a blood sample. Vyse stated that he refused to permit the taking of blood on the advice of the union representative who was present, and because the union was against it. The record indicates that Vyse admitted to having a few beers before reporting for work. The record contains, as an exhibit, an excerpt from the October, 1967 issue of *Fire Lines*, the official publication of the UFA, which states: "In the absence of a legal arrest, a member may refuse permission to allow his blood to be withdrawn for test purposes on the grounds that it is unlawful. The blood test sampling procedure constitutes an illegal usurpation of power and is in violation of the constitutional rights of the members. We urge every member to resist to the utmost the violation of his Constitutional rights."

Under date of November 1, 1967 a directive was issued by authority of respondent Commissioner to the members of the Fire Department. It advised such members that an opinion of the Corporation Counsel supported the present medical procedure of blood sampling in cases of suspected intoxication. "Therefore, all members accordingly are advised that a Medical Officer of the Fire Department may order a member to submit a blood sample for laboratory analysis when *reasonable grounds* exist for believing the member to be intoxicated. Failure to obey such an order will call for the preferring of charges for disobedience of orders." (Emphasis supplied.)

Charges were preferred against petitioner for neglect of duty for a violation of section 11.1.11 of the Regulations of the Fire Department, which provides: "Members shall exercise care to avoid injury when boarding and riding apparatus. Donning of boots and fire clothing should be done prior to boarding appa-

ratus. Members riding apparatus shall use hand rails, hand straps and safety belts, when such are provided." It is not disputed that a safety belt was provided and not used.

Petitioner was charged also with disobedience of orders for violation of section 25.1.1 of the Regulations which states: " Members shall not violate their oath of office. They shall obey all laws, regulations, orders, commands and instructions governing members of the uniformed force. Such obedience shall be prompt, implicit and unqualified."

Section 25.1.4 of the Regulations states: " Members in uniform, or when on duty, shall not at any time, indulge in, or be under the influence of intoxicating liquors." The oath of office taken by a fireman when entering the Fire Department reads, in part, " I  *  *  *  do solemnly swear that I will  *  *  * obey the orders and directions of my superiors, to the best of my ability."

After a full hearing petitioner was found guilty on both charged violations and fined 10 days' pay for violation of section 25.1.1, and a forfeiture of two work days for violation of section 11.1.11.

Petitioner instituted this article 78 proceeding to annul the determination, and the proceedings were transferred to this court by order dated October 9, 1968.

Petitioner Krolick, a fireman, reported for duty to Engine 220 at about 5:30 P.M. on March 18, 1968, and was notified that he was detailed to duty to Engine Company 269, about one and one-half miles distant. Krolick, according to his testimony, had been detailed there " a few other times." Krolick reported as ordered, arriving there about 6:30 P.M. Shortly after his arrival a Deputy Assistant Chief arrived and a line-up of firemen was ordered. All of the men except Krolick lined up on the right side of the engine. Krolick remained where he was until directed to join the line. The reason, as petitioner later testified, was because in Engine House 220 the custom was to line up front and left.

Petitioner was called out of line by Deputy Assistant Chief Kane who believed Krolick to be under the influence of some intoxicating beverage. The Chief testified there was a heavy odor of " some sort of intoxicating beverage." Krolick was glassy-eyed and with a scowl on his visage. He spoke to Krolick and, in his opinion, confirmed his belief. Chief Kane telephoned Chief McElroy who came to the scene with Battalion Chief Curley. Chief McElroy also had the impression that Krolick was under the influence of intoxicating beverages and he requested Chief Curley to return Krolick to No. 220. This was

done. Later a medical officer arrived in response to a telephone call. He directed Krolick to take certain tests which Krolick handled satisfactorily. The officer believed he detected a slight odor of alcohol and thought Krolick was " a little unsteady on his feet ", so he requested that Krolick submit to a blood alcohol test. Krolick refused because his UFA delegate had so instructed him. Krolick also refused direct orders from his supervisors to submit to the test. Krolick did state that many hours before reporting for work he had a few beers with his luncheon.

Subsequently charges of intoxication and disobedience to orders were preferred against Krolick. Krolick was found not guilty on the charge of intoxication, but found guilty of disobedience to orders (Regulations, § 25.1.1) and fined 10 days' pay. In this article 78 proceeding Krolick seeks to annul such determination.

On this appeal Krolick and Vyse each urge (1) reasonable grounds were lacking to believe either was intoxicated; (2) the order and requirement to submit to blood sampling was contrary to New York's public policy, and in violation of petitioners' constitutional immunities against unreasonable search and seizure, and of due process guaranteed by Federal and State Constitutions; (3) the finding by the Commissioner that each petitioner was guilty of the charge of disobeying an order may not be tolerated as an administrative decision and disposition. Rather it was a device for inflicting punishment for each petitioner's refusal to submit to an illegal demand that he submit to an intrusion upon his body, and thereby forego his right to refuse to do so. As to Vyse, the additional argument is made that there is no merit to the safety belt charge and no evidence to support it.

Respondent asserts (1) the request for a blood sample test was reasonable and justified in the circumstances; (2) such request violated no public policy or statute of this State, nor did such request violate any constitutional provision; (3) there was sufficient evidence in each case to sustain the determination made.

In the absence of the raising of constitutional issues, since there was a full hearing as to each petitioner, this court would be limited to a resolution of the question whether the determinations made were, in each instance, supported by substantial evidence (CPLR 7804). That is, was the evidence of sufficient probative force to support the conclusion reached,— the determination made. I would conclude that it was. In fact, there is conclusive evidence that each disobeyed the order given by

several superior officers to each petitioner to permit a blood sample. It is clear and so stated that the refusal was at the direction or upon the advice of a representative of UFA. In the case of Vyse there was proof that he failed to use the safety belt which was provided. He was an experienced fireman of 13 years' service, presumably was conversant with the requirement, and little, if anything, is shown to indicate that there was insufficient time to buckle the belt. There was ample testimony that the belt was in good working condition.

The petitioners assert that the orders were illegal and an invasion of their constitutional rights. Therefore, they were not bound to obey and their refusal was justified.

Article IX of the Constitution of the State of New York contains the bill of rights for local governments. Such governments have the power to provide for the "government, protection, order, conduct, safety, health and well-being of persons or property therein" (§ 2, subd. [b], par. [3], subpar. [c], cl. [10]); see, also, Municipal Home Rule Law, art. 6, § 50 et seq.; General City Law, § 19 et seq.). Such grant of powers is to be liberally construed (ibid). Pursuant to the powers granted the City of New York adopted a charter, effective as of January 1, 1963. Section 481 of chapter 19 of the charter provides: "There shall be a fire department the head of which shall be the commissioner." Under the charter "the commissioner shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof" (§ 487, subd. a). Unless the regulations of the department or the orders of the Fire Commissioner issued pursuant to the power vested in him, are so blatantly unfair, prejudicial to good order and discipline, without rational basis or clearly unconstitutional, they should not be disturbed.

There is no constitutional right to be a fireman. When one voluntarily elects to be a fireman he swears, voluntarily, to obey the orders and directions of his superiors to the best of his ability. The oath does not contain the reservation that obedience is conditioned upon personal agreement with such order. Necessarily he waives certain rights when he takes the oath.

Regulation 25.1.4 forbids a member in uniform, or when on duty, to indulge in, or be under the influence of intoxicating liquors. Recognizing the nature of the work of a fireman, the hazardous work in which he is engaged, the fact that not only his own life, but lives of the public, as well as the safeguarding of property, rests upon his actions, the necessity for a clear

head and rational action, unbefuddled by alcohol becomes self-evident. That the regulation is a reasonable one must be apparent.

Was the order of the Commissioner with reference to the blood sample test reasonable, and reasonably calculated to carry out the obligation imposed upon the Commissioner and to carry out as well the letter, spirit and intent of the regulation? We think it was.

Obvious intoxication or what is sometimes termed plain drunkenness with commonly recognized indicia requires no expertise to reach an accurate conclusion. The regulation not only prohibits indulging in, but also being under the influence of intoxicating liquors while on duty or in uniform. The order to which serious objection is taken makes as a necessary predicate to the blood sample test that " reasonable grounds exist for believing the member to be intoxicated." It requires that a medical officer of the department issue the order which order, if the condition precedent be found to exist, is valid.

As to petitioner Vyse, the accident which occurred could have been due to carelessness, intentional disobedience of an order, insufficient time or lack of opportunity for compliance, or impairment of the ability to function properly due to intoxication or being under the influence of an intoxicating beverage. It was in the interest of the Fire Department and public safety, as well as the interest of petitioner, to ascertain the cause and the physical condition of Vyse.

There was evidence of compliance with the regulation with respect to seat belts by a companion fireman, evidence of the stoppage of the vehicle for boarding by the fireman, of the approximate distance traveled by the vehicle from the firehouse to the place where the accident occurred, all of which tended to indicate that there was no lack of time to utilize the belt under ordinary conditions. There was also testimony with reference to a fireman usually being assigned or stationed to warn traffic at the turn. The real question here is not whether Vyse in fact was intoxicated or under the influence but whether, under the circumstances present, reasonable grounds existed for a belief on the part of the doctor who gave the order. The doctor's testimony established that such grounds, in his opinion as a medical man, did exist. It is abundantly clear that Vyse's refusal was purposeful and deliberate. Vyse spoke to the union representative and he makes no claim that he did not understand any advice given or signal made by such representative. Any claim of inability to fully comprehend or identify persons,

or understand the order, or function responsibly to that extent, must be rejected.

The petitioners assert that their constitutional rights were violated with respect to the Fourth, Fifth and Fourteenth Amendments by the decisions made. It is claimed they were subjected to unreasonable search and seizure in violation of their persons by blood letting (Fourth Amendment); that they were deprived of life, liberty or property without due process of law (Fifth and Fourteenth Amendments), and their privilege against self incrimination was violated (Fifth Amendment). Similar grounds are urged under the applicable portions of the Constitution of the State of New York.

Petitioners urge that a blood sampling test is an unwarranted intrusion into the human body and constitutes an illegal search and seizure. Here there was no illegal search and seizure because petitioners refused to permit the test. Instead each elected to intentionally disobey orders in violation of their oath. The test would not have involved risk, trauma or pain, and the refusal was not on that basis. What followed was an administrative hearing and not a criminal proceeding.

Accordingly, the results of such tests would not have been used in any criminal prosecution. Moreover, in neither instance would their testimonial capacities have been involved. In *Schmerber* v. *California* (384 U. S. 757), a criminal prosecution for driving while intoxicated, the Supreme Court considered and passed upon many of the questions raised here. In that case a blood test was taken after defendant's arrest, and after defendant's refusal on advice of counsel to consent thereto. The court, noting that it reached the judgment only on the facts there present, rejected the defendant's claims of denial of due process, that defendant's privilege against self incrimination was violated, as was his claim of unreasonable search and seizure, and held the test chosen was a reasonable one. The court did consider the test to be a " search."

In the cases on appeal there was no compulsory extraction of blood so there was no illegal search and seizure. Since there was no blood sample taken there were no results to be introduced in evidence at the subsequent administrative hearing. Thus there was nothing of a testimonial or a communicative nature used to deprive petitioners of life, liberty or property as they claim, nor were they compelled, as they allege, to incriminate themselves in violation of their claimed constitutional privilege. Any validity which might be attached to petitioners' arguments against self incrimination or deprivation of life, liberty or property without due process of law

would seem, necessarily, to rest upon the conclusion or assumption that the results of a blood sampling test would have been positive for a violation of the regulation forbidding intoxication or being under the influence of liquor while on duty.

It is not every intrusion upon a person's privacy which is protected, but only that which constitutes an unwarranted or illegal intrusion by the State. Moreover, as previously noted, this was an administrative and not a criminal proceeding. In administrative hearings compliance with technical rules of evidence is not required (Civil Service Law, § 75). The extent of the punishment if found guilty of the charges can only consist of the following: "a reprimand, a fine not to exceed one hundred dollars to be deducted from the salary or wages of such officer or employee, suspension without pay for a period not exceeding two months, demotion in grade and title, or dismissal from the service" (*ibid*, subd. 3). The right of appeal is presumed (§ 76).

Obviously under the section quoted no loss of life or liberty, actual or potential, is involved even if found guilty of the charges. If the job be considered a property right the employee, if tenured, must be given notice by charges served and afforded a hearing. The requisite of due process is preserved by the statute.

The dismissal of persons holding less sensitive positions than petitioners, in terms of potential danger to the public or to themselves, has been upheld where actual intoxication was one of the charges proved against them (see *Matter of Weber* v. *Town of Cheektowaga,* 284 N. Y. 377, a janitor; *Matter of Shanley* v. *Miller,* 277 N. Y. 704, a Deputy Commissioner of Taxes).

When intoxication or being under the influence of an intoxicating beverage is reasonably suspected, a blood sample test in cases of this kind is a proper measure reasonably calculated to prove or disprove the fact. If there be any self incrimination it can only occur when the results of such test are offered in evidence against the person charged. That did not occur here.

In the case of Krolick at least three of his superiors and the doctor believed him to be under the influence of intoxicating beverages. This was based on petitioner's appearance and the way he spoke and acted. It is concluded that reasonable grounds existed for the order when given which was purposely disobeyed. The facts and circumstances with respect to Vyse and his behavior lead to a similar conclusion.

Petitioners refer to the provision in the Vehicle and Traffic Law for a blood test (§ 1194) and recognize in their brief "that

the ever increasing number of road accidents due to the operation of motor vehicles by intoxicated persons, require stringent measures for regulation and control. The preservation of life itself is at stake." By reason of the nature of a fireman's work it is equally accurate to state that human lives are or may be at stake in the performance of his duties and, to the extent that a blood test be reasonably and properly ordered without danger to health or risk of trauma, his individual rights must yield in the interests of public safety.

The determinations sought to be annulled should be confirmed, without costs, and the petitions dismissed.

McGivern, J. (dissenting in part). I dissent only to the extent I would annul the determination with respect to the defendant Krolick as lacking in substantial evidence. Reasonable grounds justifying a belief he was intoxicated are absent. In fact, he was acquitted of any charge relating to "intoxicating liquors" while on duty. He passed all the standard tests. The Captain said: "there was nothing to indicate that his condition was anything but normal." What then caused the order he submit a blood sample for testing? The merest suspicion that a faint odor might be alcohol. We must have grounds more weighty than this to surmount the constitutional objections stressed by Mr. Justice Eager in his dissent. Although, I do not agree with the suggestion advanced in this dissent that the right to exact a blood sample is permissible only if related to a criminal offense.

Eager, J. (dissenting). A consideration of general and constitutional law leads me to conclude that the determinations of the Fire Commissioner may not be sustained.

It is noted that there is a duly promulgated regulation of the Fire Department that "Members in uniform, or when on duty, shall not at any time, indulge in, or be under the influence of intoxicating liquors." (Regulations for the Uniformed Force Fire Department of the City of New York, § 25.1.4.) But the challenged determinations are not grounded on a violation of this regulation. The petitioner Vyse was not charged with being intoxicated in violation of said regulation and the petitioner Krolick was found not guilty of the charge alleging that he was "under the influence of intoxicating liquors" in violation of the particular regulation.

Certainly, the intoxication of a fireman while on duty is fraught with serious consequences, and public interest would justify a proper law or regulation requiring a fireman to submit a blood sample for laboratory analysis where there are

reasonable grounds to believe that he is incapacitated by reason of intoxication. But, clearly, the authority for such a test should be grounded in a duly enacted statute, ordinance or other law, or in a duly promulgated rule having the force of law; and the law or rule must certainly lay down proper and reasonable safeguards and guidelines as preliminary to the demanding and taking of the test. We are a government ruled by law and the requirement of " due process of law " precludes interference with the rights of persons on the basis of a mere order or direction of a public agency or officer. Therefore, in my opinion, in the absence of a proper law or duly promulgated rule, a chief of the Fire Department does not have the authority to issue a general direction authorizing an officer of the department to order a fireman to submit a blood sample for testing.

It is settled that the taking of a blood sample from an individual is subject to the proscriptions of the Fourth and Fourteenth Amendments of the United States Constitution; that testing procedures in the withdrawal of blood " plainly constitute searches of ' persons ', and depend antecedently upon seizures of ' persons,' within the meaning of that Amendment [the Fourth Amendment]." (*Schmerber* v. *California,* 384 U. S. 757, 767. See, also, *Davis* v. *Mississippi,* 394 U. S. 721; *People* v. *Gates,* 24 N Y 2d 666.) It is also well settled that administrative officials, although acting in the public interest, are subject to the constitutional restraint against unreasonable searches and seizures. (See *Camara* v. *Municipal Court,* 387 U. S. 523; *Matter of Leogrande* v. *State Liq. Auth.,* 25 A D 2d 225, revd. on other grounds 19 N Y 2d 418; *Matter of Finn's Liq. Shop* v. *State Liq. Auth.,* 24 N Y 2d 647.)

" A search, not authorized by consent or a search warrant, is deemed reasonable only if conducted as ' incident to a lawful arrest ' " (*People* v. *Malinsky,* 15 N Y 2d 86, 91). This is the well-established rule (*People* v. *Loria,* 10 N Y 2d 368, 373; *People* v. *Bowles,* 29 A D 2d 996; *People* v. *Richter's Jewelers* 265 App. Div. 767, 771–772, affd. 291 N. Y. 161) and, certainly, an exception to such general rule cannot be based on the circumstances present here.

Of course, the intoxication of a fireman, while on duty, is of such serious concern as to warrant legislation or proper promulgation of rules in the matter. On this basis, certainly, provision could be made for the submission of a fireman to blood sampling where he is arrested for a related criminal offense (see, e.g., Vehicle and Traffic Law, §§ 1192, 1194); a search and seizure of one's person following his lawful arrest violates no law.

Furthermore, it may be borne in mind that an individual may waive any constitutional right which is solely personal (see 16 C. J. S., Constitutional Law, §§ 89–91) and, on the basis of proper law and regulation, it would seem that it would be reasonable to put a person engaging in public employment to the choice of submitting to a blood sampling under reasonable requirements or of losing the right to serve as a public employee. This could be spelled out by a statute, law, ordinance or rule, setting forth reasonable safeguards and guidelines for the protection of the rights of the fireman.

In view of the foregoing, I would annul the determinations of the Fire Commissioner in these cases.

TILZER and STEUER, JJ., concur with STEVENS, P. J.; EAGER, J., dissents in opinion; McGIVERN, J., dissents in part in dissenting opinion and votes to annul the determination with respect to petitioner William Krolick.

Determinations of the respondent confirmed, without costs and without disbursements, and the petitions dismissed.