Cooke, J. (dissenting).
I would affirm the Appellate Division which unanimously affirmed Special Term.
I agree with those courts that the Governor’s veto was never legally overridden and therefore that the purported amendment never became law.
The salient facts may be stated briefly. On March 12, 1976 the Legislature passed the Stavisky-Goodman bill (Assembly 9035-A) and sent it to the Governor. Six days later the Governor vetoed the bill and returned it to the Assembly where it had originated. On March 31, the Assembly overrode the veto. On April 8, the Senate reconsidered the vetoed bill and by a vote of 38 to 20, individually recorded by yeas and nays, failed to override the veto. The Lieutenant Governor, the Presiding Officer of the Senate, announced: "The Governor’s veto has been sustained.” The Senate Majority Leader then moved "to reconsider the vote by which * * * this override was defeated” and the motion was carried. The matter was then, on motion, tabled.
Section 7 of article IV of the State Constitution, entitled "Action by governor on legislative bills; reconsideration after veto”, provides in part: "Every bill which shall have passed the senate and assembly shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it shall have originated, which shall enter the objec-
*549 tions at large on the journal, and proceed to reconsider it. If after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill, it shall be sent together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two-thirds of the members elected to that house, it shall become a law notwithstanding the objections of the governor. In all such cases the votes in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the journal of each house respectively(Emphasis supplied.) The provision of the State Constitution is "virtually identical” to the United States constitutional provision regarding passage of a bill over a veto* which has been consistently interpreted since 1844 to mean that a motion to reconsider may not be applied to the vote on reconsideration of a bill returned with the objections of the President (Jefferson’s Manual and Rules of House of Representatives [1973], § 106; Cannon’s Procedure in House of Representatives [1963], p 468; 8 Cannon, Precedents of House of Representatives [1936], § 2778; 5 Hinds, Precedents of House of Representatives [1907], § 5644). As Speaker Champ Clark noted in 1913: "A motion to reconsider is carried by a simple majority vote, but a bill can be passed over the presidential veto only by a two-thirds majority. If any other view were taken * * * we might go on in a circle to the end of the session, never getting anywhere” (8 Cannon, Precedents of House of Representatives [1936], § 2778). Although the appellant Board of Education states that it has been the practice in New York "to permit reconsideration of override votes”, it cites but two instances, one in the Assembly and the other in the Senate, in support of the claimed practice but in each of these instances the tabled motions were never removed from the table. Neither resulted in the purported enactment of a law and, evidently, there was *550 no judicial testing of such a law. Appellant also cites two out-of-State decisions in support of its position.
It is a recognized rule of parliamentary law that a vote on the reconsideration of a vetoed bill cannot be reconsidered again since, as stated in American Manual of Parliamentary Law or The Common Law of Deliberative Assemblies by Fish at page 91, "A motion cannot be reconsidered * * * (4) If it has been Reconsidered under a veto.” Authorities and precedents aside, an analysis of the relevant portion of section 7 of article IV of our Constitution itself logically speaks for affirmance. The words "reconsider” and "reconsideration” appear therein and at no place in the steps outlined in detail is any reference to "reconsideration of the reconsideration” or to "consider” or "consider anew”, such as would be the situation where a bill was to be treated with all ordinary parliamentary maneuvers, as if in the first instance or de novo. This is obvious from the very terms of the section, because when the bill goes back to a house of the Legislature for reconsideration it is not subject to amendment. "No amendment can be made in considering a vetoed bill” (Fish, American Manual of Parliamentary Law or Common Law of Deliberative Assemblies, p 85). The section, speaking of "the” bill refers to the same bill which has been passed and vetoed. The constitutional mandate applicable "[i]n all such cases”, referring to the action of "reconsideration” in each of the legislative houses, that "the votes in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the journal of each house” indicates that such a vote on yeas and nays shall be final and conclusive. The Constitution contemplated a "reconsideration” terminating in one vote and the recording of that vote as specified. Otherwise, the matter could go on interminably—a result to be avoided and not within the constitutional provision.
It must be accepted that section 8 of rule V of the Senate rules for 1976, entitled "Reconsideration”, cannot nullify or supersede the constitutional provision regarding reconsideration of a bill which has been vetoed. Said rule, however, is not applicable to reconsideration of the vetoed bill since, as the majority recognizes (p 539), "by the use of the verb 'reconsider’ in this constitutional provision it was not intended to refer to the familiar parliamentary procedure (here embodied in Senate rule V, § 8)” and that "to 'reconsider’ in the constitutional sense is not the same as to reconsider in parliamentary *551 usage”. The constitutional procedure for reconsideration after veto is unique and not an ordinary parliamentary question. Even under the rule, reasonably interpretated, if it were relevant, the second vote or reconsideration here taken after veto was not authorized since, in all reality, the same "question”, the enactment of the bill into law, "has once been put and decided”—when the bill originally passed the body. The essence of the question is the same even though the vote majority required has changed. Support for this proposition is found in Barclay, Digest of the Rules of the House of Representatives US (1868), where it is stated at page 227: "The main question in the consideration of a vetoed bill is, 'Will the House on reconsideration agree to pass the bill?’ ”
The solution of the home rule question is likewise uncomplicated. The Stavisky-Goodman bill (see L 1976, ch 132) purported to amend section 2576 of the Education Law (subd 5) by mandating that the City of New York appropriate funds for public elementary and secondary education in "an amount equal to the average proportion of the total expense budget of such city, as amended, appropriated for the purposes of the city school district of such city in the three fiscal years of such city immediately preceding the [current] year”. This the Legislature could not do, constitutionally.
The people of the State of New York, in their Constitution, have granted to every local government the "power to adopt and amend local laws not inconsistent with the provisions of [said] constitution or any general law relating to its property, affairs or government” same being "[i]n addition to powers granted in the statute of local governments or any other law” (NY Const, art IX, § 2, subd [c]). At the same time, they have withheld from the Legislature the power, except as expressly otherwise provided, to interfere with "the property, affairs or government of a local government” (NY Const, art IX, § 3, subd [a], par [3]). One of those express exceptions encompasses the duty of the Legislature to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (NY Const, art XI, § 1; see art IX, § 3, subd [a], par [1]): However, this power of the Legislature as to education is not so embracive as to disregard and destroy other constitutional guarantees in respect to entirely different and unrelated governmental functions. Undoubtedly, as suggested by Special Term, the Legislature could have passed laws requiring the adherence by the *552 City of New York to certain educational standards and, very likely, to have required certain specified minimum expenditures, based on a per pupil or other basis, in furtherance of those quality criterions. The Stavisky-Goodman bill, as incorporated in chapter 132 of the Laws of 1976, compels the appropriation by the City of New York of an amount not grounded on the city’s educational needs but rather on "the average proportion of the total expense budget of such city * * * appropriated for the purposes of the city school district of such city in the three fiscal years of such city immediately preceding the [current] year” (emphasis added). By using "the total expense budget” average as the denominator of the fraction or formula, the bill directly interferes with other components of the total budget, thereby interfering with and exercising control over the constitutionally protected "property, affairs or government” of New York City—matters no less than, to name a few, the management and use of its highways and property, the compensation of its officers and employees, the transaction of its business, the discharge of claims, and the government, protection, order, conduct, safety, health and well being of persons or property in the City of New York (see NY Const, art IX, § 2). Instead, at most and in order to avoid unconstitutional entanglement, the thrust of legislative attention should have been towards the numerator alone, the amount expended in past years for school purposes, merely as a guide for required current or future educational expenditures.
Under the guise of education, there is no constitutional justification to exercise control, partial or otherwise, over practically the entire gamut of home rule exclusively committed by the Constitution to the City of New York or, indeed, perhaps on another occasion to any other local government. By command, the grant of power to local governments, under article IX (§ 2, subd [c], par [10]) of the Constitution, to provide for the "government, protection, order, conduct, safety, health and well-being of persons or property therein” is to be liberally construed (NY Const, art IX, § 3, subd [c]; Matter of Krolick v Lowery, 32 AD2d 317, 322, affd 26 NY2d 723, cert den 397 US 1075).
Thus, the Stavisky-Goodman bill, conceding arguendo that it was validly enacted, violates the home rule provisions of the State Constitution and is void.
The petition should be dismissed. However, in the event of *553 the conversion of the proceeding to a declaratory judgment action, there should be a remittal for entry of judgment declaring that chapter 132 of the Laws of 1976 was not validly enacted into law and also that it is otherwise void, being violative of the home rule provisions of the State Constitution.
Chief Judge Breitel and Judges Gabrielli and Wachtler concur with Judge Jones; Judge Jasen dissents in part and votes to modify in a separate opinion; Judges Fuchsberg and Cooke dissent and vote to affirm in separate opinions.
Order reversed, etc.

 Section 7 of article I of the United States Constitution provides in pertinent part: "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively.”